IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MARCHETTA TYUS LEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:03-cv-2752-TMP |
| ) | |
| JEFFERSON COUNTY COMMISSION, ) | |
| d/b/a Cooper Green Hospital, ) | |
| and JEFFERY GERMANY, ) | |
| individually and in his ) | |
| official capacity, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION**

This action is before the court on the separate motions for summary judgment filed January 18, 2005, by defendants Jefferson County Commission and Jeffery Germany. Plaintiff Marchetta Tyus Lee filed an opposition on February 13, 2005, and the defendants filed briefs in reply. Oral argument on the motions was held, and the parties have consented to the exercise of jurisdiction by the undersigned magistrate judge pursuant to 18 U.S.C. § 636(c).

## **I. SUMMARY JUDGMENT STANDARD**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment

"always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  Celotex, 477 U.S. at 322-23.  There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."  Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)).  The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings.  Celotex, 477 U.S. at 324.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The substantive law will identify

which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II.  FACTS

For purposes of the pending motions for summary judgment, the following facts are viewed as undisputed, or if disputed, in a light most favorably to the non-moving plaintff.

Plaintiff Marchetta Tyus Lee began working as a nurse at Cooper Green Hospital in Birmingham, Alabama, in 1993.  She was assigned to the nursery, and later moved to the obstetrics/gynecology department.  In 1996, she transferred to the emergency room, where she has remained as a staff nurse and relief charge nurse.  Cooper Green Hospital is a public hospital operated by the Jefferson County Commission.

Defendant Jeffery Germany served as a member of the Jefferson County Commission from about 1990 until November 2002.  He was the health and human services commissioner, with direct oversight responsibility for Cooper Green Hospital, the county's indigent care facility.  Germany had the power to approve or reject personnel decisions made at Cooper Green.  Personnel changes such as hirings, terminations, and promotions were sent to him for his approval.  His usual practice was to take an active role in decisions affecting top management at Cooper Green, but simply to approve other personnel decisions that were recommended to him by a panel of Cooper Green managers.  In cases of lower-level hiring decisions, such as those for charge nurse or nurse manager, Germany usually did not review the recommendations himself, but had a staff person "sign off" or "rubber stamp" the changes that were recommended by the panel, or to leave them for Germany to sign without review.

In October 1999, Lee and Germany met at a nightclub.  They began a consensual sexual relationship.  Germany told Lee that he would "spoil" her and would help her put her daughter

through college. Lee's daughter received a scholarship from the Jefferson County Commission in the spring of 2000. The sexual relationship ended in January 2001. After the relationship ended, Germany and Lee occasionally encountered each other at nightclubs or social events. When he saw her at a nightclub, he sometimes talked to her about getting back together, and sometimes put his arm around her waist or stood in front of her and blocked other men from talking to her. She declined to resume the relationship, and on one occasion turned her back to him and refused to talk to him. Even so, Lee and Germany continued to have telephone conversations and some social interaction.[1]

On one occasion during 2001 or 2002, after their relationship ended, Lee complained to Germany that Cooper Green was scheduling her to work 12-hour shifts, when she wanted to be scheduled only for 8-hour shifts. He intervened on her behalf by calling a supervisor at Cooper Green, and her schedule was changed back to 8-hour shifts.

In October 2001, Cooper Green posted a position for a charge nurse in the emergency room. Lee applied for the position, as did three other Cooper Green employees. Each applicant was scored by the personnel board, took a test, and underwent interviews. In February 2002, Lee was informally told by the Cooper Green clinic director that she would not be selected for the charge nurse position. When she protested, the clinic director told her she would have to talk to Germany. Lee contacted Germany and asked to meet with him about the position. At that meeting, plaintiff alleges, Germany asked if he could "be her boyfriend" again, and further told her that she "couldn't get anything unless [she] came through him."

---

[1] Plaintiff has argued that Germany left suggestive messages on her answering machine, but has conceded that all the messages were left during the consensual sexual relationship, or before January 2001.

The emergency room charge nurse position was not filled. Cooper Green changed the duties of the vacant position to add additional responsibilities, and a new position was created in April 2002. Cooper Green then posted an opening for an emergency room nurse manager, and applications were taken for the newly created nurse manager position. Lee again applied, was scored by the personnel board, and was interviewed by the assistant administrator of nursing, the chief operating officer, and the director of the emergency room. Lee and three other applicants competed for the position.[2]

In October 2002, the three Cooper Green managers who had conducted the interviews recommended another employee, Sultana Bend, to fill the nurse manager position. Dianne Vandiver, the assistant administrator of nursing, testified that she interviewed all of the candidates and ultimately recommended Bend, "based solely upon ... the relative qualifications of each candidate." The recommendation of Bend was submitted to Germany, who could have rejected or accepted the recommendation. Bend's recommendation was accepted by Germany as part of his "routine approval" process. Lee asserts that Bend had less experience and was less qualified for the job than she, but Lee does not dispute that Bend was selected for recommendation by the panel, and not by Germany.

Shortly after the promotion was given to Bend, Lee again contacted Germany to complain that she had not been promoted. Germany told Lee that she should first "follow the chain of command" within Cooper Green. Lee contacted Cooper Green decision-makers, but was not given

---

[2] Although Lee alleged in her complaint that she scored higher than any other applicant for the charge nurse and nurse manager positions, she admitted in deposition that she doesn't know what any applicants' scores were.

any relief. She was told that she had not been chosen because of the way she answered questions about needed changes in the emergency room. About that same time, Germany's term ended on the Jefferson County Commission. On his last day in office in November 2002, Germany met with Lee in his office.[3] They discussed the promotion decision, and Lee recorded the conversation on a tape recorder she hid in her purse. The recording has not been offered by either party as evidence.

On January 9, 2003, Lee filed an EEOC charge, asserting that Germany blocked her promotion because she had refused his sexual advances. Lee timely filed the complaint that commenced this action on October 6, 2003, asserting violation of Title VII and state-law claims of civil assault and invasion of privacy.

### III. DISCUSSION

A. Title VII

Plaintiff asserts that she was denied a promotion in violation of Title VII. Defendant Jefferson County Commission, the only proper defendant to such an action, asserts that any claim related to the promotion to the position of charge nurse is time-barred. Although plaintiff vaguely asserts that the conduct complained of is a "continuing series of incidents" that constitute sexual harassment, plaintiff also essentially concedes that the only promotion at issue in this action is the

---

[3] Germany had suggested that they meet away from the office, but Lee insisted on a meeting in Germany's county commission office, and that is where the meeting took place.

promotion to emergency room nurse manager, which was filled in October 2002. (Plaintiff's Opposition at pp. 3-4.)[4]

Summary adjudication of the Title VII claim then turns on whether plaintiff was denied the promotion to emergency room nurse manager in October 2002 because she refused to acquiesce to Jeff Germany's sexual advances. As Title VII law evolved, such a claim once was referred to as "*quid pro quo*" sexual harassment, which is the label used by plaintiff in her complaint. Two Supreme Court opinions in 1998 indicated, however, that the term no longer is appropriate in analysis of a claim based on workplace sexual harassment by a supervisor. In Faragher v. City of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998), and Burlington Industries v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998), the Court delineated two categories of actionable sexual harassment: (1) that which involves a "tangible employment action" such as a termination or demotion, and (2) that which does not involve a tangible employment action but which does alter an employee's working conditions.[5]  Faragher, 524 U.S. at 790;  Ellerth, 524 U.S. at 761-63. The employer is vicariously liable when a supervisor engages in harassment that leads

---

[4]  To the extent that plaintiff seeks to claim that the failure to fill the position of charge nurse is actionable, that claim is time-barred by plaintiff's failure to timely file an EEOC charge. To the extent that plaintiff seeks to claim sexual harassment, this claim is indistinguishable from her failure-to-promote claim because the only adverse job action plaintiff alleges is that she did not receive the promotions. Furthermore, even if her complaint could be construed to allege that Germany's advances were unwelcome sexual harassment, her allegations that he repeatedly asked to resume the relationship and that he put his arm around her and approached her in nightclubs is not the kind of severe or pervasive conduct that is prohibited by Title VII.

[5]  The second type of harassment gave rise to what used to be termed a "hostile environment" claim.

to an adverse tangible employment action.[6]  In the instant case, the parties do not dispute that the failure to promote Lee to nurse manager constitutes an adverse tangible employment action. Accordingly, the plaintiff's claim should be analyzed under the first definition.

The Eleventh Circuit Court of Appeals has made clear that even sexual insinuations and suggestions may be sufficient to state a claim under the analysis.  Frederick v. Sprint/United Management Co., 246 F.2d 1305, 1312 (11th Cir. 2001).  It is not necessary that the alleged harasser expressly or directly demanded sex in return for the promotion; a veiled threat may suffice.  Even so, the plaintiff must establish not only that she received some sort of sexual demand, but also that the alleged harassment was causally linked to the adverse action.  Id.  In the instant case, Lee must demonstrate not only that Germany suggested to her that acquiescence to his sexual demands would influence her promotion, she also must show that Germany exercised some influence over the adverse decision to promote someone else.

The undisputed evidence demonstrates that Lee was not recommended for the promotion by three Cooper Green managers because they chose instead to recommend Sultana Bend.  While Lee "feels" and "believes" that Germany influenced the three managers, there simply is no evidence that he did so.  In fact, one of the three managers has testified that Bend was considered better qualified.  There is no evidence that either of the other two decision-makers was in any way influenced by

---

[6] Under Faragher and Ellerth, liability may be avoided in cases not involving a tangible employment action where the employer raises an affirmative defense by demonstrating that the employer exercised reasonable care to prevent and correct the harassment and that the plaintiff unreasonably failed to report the conduct or avoid harm.  524 U.S. at 807; 524 U.S. at 765. Because this case involves a tangible action, and because the Faragher defense has not been raised by the defendant Jefferson County Commission, the defense need not be discussed herein.

Germany. Lee concedes that when she asked the Cooper Green managers about their choice of Bend, they told her they did not like her responses to questions about changes that needed to be made in the emergency room. There is no evidence that the decision to recommend Bend was anything more than the assessment, albeit subjective, that Bend was better suited to the position.

Furthermore, there is no evidence that Germany did anything more than "rubber stamp" the recommendation that was given to him. In fact, there is no evidence that Germany was aware that Lee had been rejected for the position until she complained to him. Certainly, it is conceivable that Germany, who clearly exercised some influence over Cooper Green administration, *could* have manipulated the process, but in the face of a well-supported motion for summary judgment, plaintiff must do more than offer possibilities and conjecture. She must have evidence. Like the plaintiff in Frederick, Lee has failed to present sufficient evidence to establish any causal link between the adverse action she suffered and the alleged harassment.

Lee has presented evidence that Germany conducted himself in what, at best, could be considered an unprofessional manner, and that he engaged in sexual relations with a subordinate. However, the relationship was consensual. Moreover, it is clear that Lee did not expect her relationship with Germany to have no impact on her career. To the contrary, she expected Germany to provide special favors, which he apparently provided by awarding a "scholarship" to her daughter and by intervening on her behalf to change her work schedule. It appears that Lee became unhappy with the arrangement she had with Germany, not because he subjected her to any adverse

employment action, but because she stopped receiving special treatment after she stopped engaging in sexual relations with him.[7]

In short, the plaintiff has failed to demonstrate any causal link between the denial of promotion and Germany's conduct. Absent that causal link, her Title VII claim is subject to be summarily dismissed. Frederick, 246 F.3d at 1312.

### B. State-Law Claims

Lee further alleges that Germany, and vicariously the Commission, is liable for civil assault and invasion of privacy under Alabama law. The Commission contends that no liability may be extended to it because Germany's alleged conduct must be seen as *ultra vires*. Germany contends that Lee's allegations simply fail to state a claim under Alabama law.

A civil assault has been defined as an unlawful "offer to touch the person of another in a rude or angry manner under such circumstances as to create ... a well-founded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt." Wright v. Wright, 654 So. 2d 542, 544 (Ala. 1995). It is the "manner or spirit" of the action that differentiates an actual assault or battery from an ordinary social encounter. See, e.g., Surrency v. Harbison, 489 So. 2d 1097, 1104 (Ala. 1986). There is no allegation, and certainly no evidence, that Germany's interaction with Lee at nightclubs or social events was done rudely or angrily, or even that his advances created any fear

---

[7] Plaintiff attempts to turn Title VII inside out, arguing essentially that, if she has sex with a superior, she then should be entitled to favorable treatment. Title VII confers protection, not power.

in plaintiff.  A hand around the waist or being approached by an ex-lover may be unwelcome or uncomfortable, but such ordinary social interaction, especially in the context of a nightclub, can hardly been deemed an actionable assault.

An invasion of privacy under Alabama law is defined as a "wrongful intrusion into one's private activities."  McIsaac v. WZEW-FM Corp., 295 So. 2d 649, 651 (Ala. 1986).  The intrusion must be done "in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities."  Id., citing Phillips v. Smalley Maintenance Services, 435 So. 2d 705 (Ala. 1983); Restatement (Second) of Torts § 652B (1977).

In this case, Lee asserts only that Germany asked to resume their prior consensual relationship, put his arm around her at a nightclub and talked to her there, and, in response to his request that she meet with him, asked her to meet him away from the office.  This conduct falls far short of the level of egregiousness that could give rise to an invasion of privacy claim.

Because the court agrees that, even if true, plaintiff fails to assert facts that constitute civil assault or invasion of privacy under Alabama law, both defendants are entitled to summary judgment in their favor.

## IV.  CONCLUSION

Accordingly, consistent with the foregoing discussion of the evidence presented by the parties in support of and in opposition to the motions for summary judgment, this court determines that defendants' motions for summary judgment against plaintiff (court documents # 24 and # 27) are due to be granted, and all of plaintiff's claims are due to be dismissed with prejudice.

A separate order will be entered in accordance with the findings set forth herein.

Dated the 12th day of September, 2005.

                                              T. MICHAEL PUTNAM
                                              U.S. MAGISTRATE JUDGE